Good morning. May it please the court, my name is Ronald D. Ritchie and I am the counsel for the petitioner, Mr. Trejo. Due to the egregious errors of the government in this case, especially the immigration judge, it is mandated that this case should be reversed or at the very least remanded back so that the record can be fully developed as required by this court in the Quintero case. And alternatively, or additionally, so that the petitioner can be given his constitutional and statutorily mandated rights to have his asylum application considered by USCIS, which has been pending without an interview since May 2, 2018. It's really significant in this case that Petitioner Trejo, just like the petitioner in the Quintero case, was pro se. But there's an additional element here of significance, and that's that the petitioner in this case was also an unaccompanied minor child, known as UAC, and he was before the judge. He's entitled to certain legal safeguards. And, you know, I'll go more right to the Quintero argument and come back to the other, but the judge miserably failed in her conducting the removal proceedings to fully develop the record as she is required by statute in Teralia. You know, the Quintero case has to be read with a little bit of common sense. And in this case, the immigration judge asked Mr. Tapas questions about his, that surrounded his circumstances, mainly his connection with the gangs. And after asking several questions in that area, it didn't seem like it's productive to go any further. What could you put in? In other words, we can't construe Quinteros to say you have to catalog or canvas all of the defenses that are available and find facts for the non-citizen. It basically means you have to be solicitous and helpful and not be over-technical in all of that. But his testimony was pretty straightforward, and it didn't seem to suggest that anything further was needed. I don't know what you would like to have him inquired about or what was available to the IJ at that point. Yes, Your Honor. Well, Quintero lays out, based on my reading and analysis, at least six requirements, at the very least, that an immigration judge must… At this moment, I know that case. At this moment, let's stick with the facts of this case. And what would you have expected the IJ to do in this case in light of what Mr. Tapas was relating? Well, in this case, Your Honor, the IJ only asked three or four questions relating to the merits of this item claim. Three or four questions. Yeah, I understand. And I've read those questions. I've read the answers. And it sounds to me that his answers precluded any fruitful further inquiry in those areas. Well, with all due respect, Your Honor, I would disagree because based on his answers, the judge should have inquired, okay, you put in your asylum application that you're not a member of that gang. One reasonable question would be, well, did you belong to any gang? Another reasonable question that the IJ should have required minimally was, well, you state that your classmates were killed by gang members, okay, and, you know, were you around when they were killed? Okay. Where were you at when they were killed? He answered that. He says it was nearby, but he wasn't connected with that. He wasn't threatened by the gang. He didn't – wasn't a member of the gang. He – no family or friends were members of the gang or threatened by the gang. Well, Your Honor, I don't – You don't want to have him lie, do you? Definitely not, Your Honor. But he wasn't – he wasn't asked. He's a young boy with a ninth-grade education, doesn't have a lawyer. The judge, IJ, should have asked a lot more questions. The judge should have been more thorough and comprehensive, should have asked him, well, you know – Would it have helped if you, when you got into the case, interviewed him and offered what he would have said with further input? We don't have that either. Right. I just got involved at this level, Your Honor. Well, I understand. Yeah. I think if he – I'm not fault-flowing. Well, sure. If he had had counsel, he probably would have done better. He would have fared better, according to the statistics. And I think it's mentioned in the statistics in the Quintero case that a person that has an asylum applicant that has counsel fares much better than one without. But doesn't – I mean, Quintero has a – it acknowledges that we apply a harmlessness review, and it does set up a presumption of prejudice if the record's not sufficiently developed, there could have been more, but even that can be overcome. So, we can't just look at the record and say, well, the IJ could have asked more questions or could have given more information about, you know, the technicalities of what a PSG is and how to define it. We have to look at this record and see whether if all of that had been done, there's any reason to think that things would be different. And here we do have a record, and the applicant says neither he nor family, close friends, or colleagues ever experienced harm, mistreatment, or threats in the past from anyone. That's in his asylum application. And then at the hearing, he said neither he nor anyone in his family ever had a direct encounter with a gang member. So, with that record, how do you overcome – how do you show prejudice? Well, because we don't have a complete record, or we don't have a – that's probably a misphrase. We don't have a fully developed record. Had the judge fully developed the record and followed, you know – But doesn't the record you have seem to pretty much foreclose the possibility of harm on a protected ground? Well, we don't – I don't know that we can come to that conclusion because the judge is required to do at least six requirements at the minimum, and the judge didn't do any of those six. Okay? Judge is supposed to explain the – So, counsel, yeah, I think we appreciate the argument that some of the things that are listed in Quintero weren't done, maybe all of them. So, I mean, that – and if the issue is, did it strictly comply with Quintero, you know, that would be one thing. But what's your position to, I think, the question both Judge Niemeyer and Judge Rushing are talking about? Do you concede that if there is a record that forecloses the possibility of relief under a particular social group application, that we – that you still would – we're still required to grant the petition and remand to go through those? Six questions, if the record – I'm not saying – I'm not asking you to agree that this is that record. But if the record makes it clear that you can't have relief under the particular social group claim? Well, I would answer it this way. And the whole problem in this case is we don't know. We never – the judge never got to that point. Okay? The judge never developed the record sufficiently to know if there's no relief available. I got you. So, that seems to say – I mean, I think if I interpret your answer to be – because that's – that you can never – I mean, this is like a strict liability, do this or we vacate, because until we do it, we don't know for sure, regardless of what we do know. Is that your position? That would be our position, Your Honor. And even if there's not a strict liability standard, there's minimal requirements, according to Quintero and the statute, the Constitution, have to be adhered to. It didn't happen here. There's only three or four questions. In another area of the law involving ineffective assistance of counsel, we're often confronted with situations where counsel didn't do what they should have done. Your argument here is the IJ didn't do what he should have done. But whenever we look at it in connection with the insufficiency of the representation, we always look to whether change things or prejudice. And here, we have no evidence that it would have, because the affirmative evidence that he gave seems to preclude it. Now, your argument is, I suppose, there's some factual scenario that could have changed things. But then that's my follow-up question, is what is that? And nobody has made a proper on that to show what I would call – I don't know if the requirement of it, but it would call prejudice for failing to follow the Quintero criteria. How do we address that? We're sort of in the area of abstractions. I think we can only get to there if we look at the requirements laid out in Quintero. If a judge meets those requirements, minimal requirements, then we can fairly and reasonably and legally state, okay, there is no claim here or no claim that would support granting of relief. But the judge never got there. The judge never got past first base, okay? The judge should have asked questions based on both what was in the asylum application and based on what the petitioner was asked and answered, should have asked questions, well, did any of your family members ever have any problems with the gangs? Were they ever involved with the gangs? That was never asked. I'm sorry? I thought he answered that question. I thought it was only in the I-589, Your Honor, but I could be mistaken. Because, again, there are only like three or four questions. The judge spent most of her time asking about his schooling, education, and not focusing on what the requirements are. If she had at the very minimal explained to the petitioner what the requirements are for the law and what he needs to show and that his father could testify and different things like that, we would be in a different situation, Your Honor. I'll reserve. I'll go and sit down for now. Thank you. Mr. O'Malley? May it please the Court, my name is Andrew O'Malley. I represent the Attorney General of the United States. The Court should deny the petition for review because the immigration judge fulfilled her obligation to develop the record and substantial evidence supports the ultimate determination that Mr. Trejo failed to establish eligibility for asylum, withholding of removal, and protection under the Convention against Torture. One of the touchstone principles that we can derive from Quintero is that what is required of the immigration judge is really dependent on the facts and circumstances of the case. Is that really right? I get the prejudice argument. I'm not sure what we need to think about that. Doesn't Quintero pretty much say, whether you agree with that or not, that's our precedent and it says at a minimum you must do these things. It doesn't say in certain factual situations you must do these things. It seems to me the only thing we have as a potential out on that is near the end where it says it's presumptively prejudicial unless the error is plainly irrelevant to or otherwise does not hinder in any way the reviewing court's ability to assess whether prejudice occurred. I agree with you on the prejudice point, Your Honor. But you started off saying it's this kind of look at the facts and then decide whether to apply, do this or that to develop the record. I believe that's a fair read. I don't think it's a matter of developing the record. I think it's you look at the facts, you look at what the claim is, what the facts and circumstances of the fear are, and then you determine is that a basis for relief as a particular social group. If that's the case, then you can work with the individual to develop the contours of that definition. As we know from all our particular social group cases, the specific delineation, the specific definition is absolutely key. And that's where the immigration judge needs to delve into helping the pro se applicant define the specific contours of that particular social group. But where, as here, there is no basis for a particular social group evident in any of the testimony or the record, there's really no reason to go in and start developing a specific definition. That wasn't the case in Quintero where the individual was a former gang member, was threatened, was beaten, was harmed, could not leave the gang. Those are facts on which you can build and define what you need, which is an exact delineation of that particular social group, in order to apply that nexus requirement. And that's what I think is the key in Quintero, is that where the facts present where there might be a potential social group, then the immigration judge has the responsibility to go through and define. Where's the language in Quintero that you're saying tells us there needs to be some indication that there's a viable particular social group before you must do what Quintero says? We have everything that depends on the particular facts of the case. Here we go. Thus, we find that petitioner alleged sufficient facts relevant to his eligibility for relief during his removal proceedings to put the immigration judge on notice as to his potential social groups. Can you give me just a page or something? I don't know a reference point for that. Yes, Your Honor. That's page 640 under subheading F. All right. And I think if you go through the entire decision, that's sort of key to the whole thing, is that you've alleged sufficient facts that the immigration judge needs to go and define the contours of that group. That's not here. And there really was nothing for the immigration judge to do because there's no facts on which to define a particular social group. It would have been make work to sort of sit down and define the contours of a group that simply can't exist. And again, Your Honor, I think on the facts it's highly distinguishable from Quintero where there were so many facts on which to define a particular social group. Now, petitioner speculates as to what Mr. Trejo might have said if the immigration judge asked particular questions, specifically about the classmates that were nearby. Of course, we have nothing saying that anything would have come out of that question. He's never said, I witnessed that or those classmates were my friends and I was afraid I was going to be in the same group. He has never said that. But we've been talking a little bit about this. What do we do with the absence of a record? And should there have been a proffer? Or, you know, we just we don't have the evidence. I was kind of under the impression that Quintero seems to resolve that uncertainty by saying where there's a presumption of prejudice because we don't know. We can't know what was not developed, especially when someone was pro se. So there's this presumption of prejudice that can be overcome in certain circumstances. Is that an accurate understanding of how Quintero wants us to fill the void? I'm not sure that that's a fair assessment of how proceedings should go on. That might be right. But is it what Quintero says? It is to say that, yes. But at some point, if there's no reason to send the case back for development of the record, then why do it? Well, that's so you're pointing out you might have a record that shows that that wouldn't be fruitful. Right here. We don't hear there wasn't any discussion about the group because the claimant, the petitioner said, I have not been harmed. That's right. There's no harm. There's no reason to look at. Am I part of a group that was targeted for harm? That's right. For a particular reason. Like the reason doesn't matter because there was no harm. That's exactly right. But I just, I'm not sure that the questions about, I'm not sure it's left to us to decide how is the void supposed to be filled. It seems like Quintero tells us we presume prejudice, but in certain circumstances you can overcome it. And the question for us is, has it been overcome here? I think that's fair. And, yes, I think it has been overcome here because there's no indication that he would have ever said anything else. But that is kind of circular, right? I mean, so it would seem, I mean, look, and I may not, I may disagree based on what we know. It seems hard to imagine what the particular social group would be. But the follow-up, just what you, in the dialogue with Judge Rushing, maybe if he's not harmed, yeah, because as I recall, the immigration judge kind of acknowledged, hey, you're not going to be able to understand what a particular social group is, which, quite frankly, is a bit troubling. And Quintero would say that's the whole point. You're supposed to make sure they understand that. And now, if there's a clear, applicable particular social group that just wasn't articulated and there's not any harm, maybe that issue becomes kind of irrelevant. But it seems hard for me to look at Quintero and say, at least in terms of the particular social group, you know, the immigration judge has a duty to explain it and talk about the different types of social groups. Maybe we have a situation here that that's not necessary if there's no harm, regardless of how perfectly you articulate a social group. I think that's a fair characterization. I think that's what I'm trying to say in terms of when you look at the facts that were developed to determine whether or not there's a basis for a claim, and there's no reason to get into whether or not the delineation of a particular social group and trying to explain to a petitioner a particular social group requires social visibility. But the presumed prejudice in Quintero arose out of the discussion that started with the facts suggesting a further inquiry. And the court spent some time on those facts that had provoked the further inquiry and said he had been a member, that he would be killed if he left, that his cousin was killed. The immigration judge, why would he kill him, explained the gang had already threatened him along with his cousin, and that MS-13 had murdered Romero for leaving the gang. And the question was, in those circumstances, what is the appropriate articulation of a group? And the court said that circumstance is presumed to be prejudicial. It's a little difficult to fully understand what were to do in this kind of circumstance, because the argument could be made that if he simply didn't conduct the inquiry, it's presumed prejudicial and we tell him to conduct it. But in this case, we don't have the facts that suggest the inquiry as Romero did. I'm sorry, are you saying you don't have the facts that suggest the inquiry is necessary or the facts that… Romero seems to imply that you just don't do this in a vacuum, that the facts should suggest to you that you do something more. In that case, there were quite a few facts about his leaving the gang and being threatened and killed and his cousin being killed and all this type of stuff. And that there was a practice of MS-13 to kill people who weren't members. And so the only difficulty was the petitioner didn't have the ability to develop in that circumstance, what is the social group? And I don't know how that plays out fully, because I think there's other language to say we have this presumed prejudice if he doesn't make that inquiry. But maybe we have to read into that if he doesn't make that inquiry in the context of those facts. I think that… Or facts of a similar nature. I think that's absolutely right, Your Honor. Well, I'm not, I'm just, I'm raising this question. Oh, you're raising it as a question. Mike should be right, but there's a fair argument, I think. You certainly, I mean, we certainly do have those facts that may have informed the decision there. Whether that, whether the holding in the case requires that, I think is maybe not the strongest argument. I think the strongest argument might be, look, accept the fact that you were supposed to do it. Accept the fact that it, you know, there may be even, had you done so, you might have identified a particular social group. But even if you have the perfect one, one that's well established and undeniable, you still have to have a threat and you still have to have harm. You have to have some level of persecution. I think that's the, that's probably the best argument. Not conceding the first point, but yes, and I think the facts that he, that he established or that he pled to are, they put him in no different position than anybody else in El Salvador, and that's just not a basis for relief. I'd also like to point out that he was 20 years old at the time that he testified. He was over 18 when he, when he filed his application, so he was not a child testifying in court. And he also filled out his application with the assistance of Catholic Charities, and that application provides absolutely no details with respect to any sort of claim. It was that simple, I'm afraid of gangs because I wasn't part of their group. He provided no more testimony to flesh that out in immigration court. I would also point out that the, the viewing of that comment that, well, I had classmates killed nearby, and whether or not that warrants any more sort of inquiry or discussion, at some point that has to be left to the, to the discretion of the immigration judge, who's the frontline adjudicator who's in the room with the applicant, who can see how this claim plays out and who sees these kind of claims all the time. So to look at a cold record and say that warrants, that absolutely warrants more inquiry is a little difficult to do. I'd also like to point out that the voluntary departure issue, Fisher raises that the applicant wasn't advised of his right to voluntary departure. Fisher has waived any argument on merits of that and only addresses the, the alternative determination that it was waived on appeal. Ultimately, that doesn't matter. This individual is an applicant for admission. He's simply statutorily ineligible for voluntary departure. So that issue is, is taken care of in that matter. I'm happy to address the jurisdictional issue with respect to the JLP litigation. It wasn't exhausted, the argument that petitioner is trying to make. The Immigration Court, for the reasons that, that we cite in our brief, properly exercised jurisdiction here. And I think that's clear by statute and case law. Unless there are further questions, Your Honor, I want you to let me know. Thank you. Mr. Ritchie. Thank you. First, I want to note that, that as Your Honor, Judge Niemeyer, I pointed out that, that yes, I apologize. The judge did ask the petitioner if the MS or 18th gang, you know, had any encounters and bothered anyone in your family. I was thinking about it on the I-589. You allowed for that. Thank you. Fair enough, thanks. One mistake, okay. Well, I would, just about the harm, the prejudice, I believe there is prejudice and harm. I think there's two elements to that. One is in the asylum, you know, one has to demonstrate either past persecution or a well-founded fear of future persecution. So, and I don't think the judge, the judge could have and should have gotten into that. And there's, but I would not concede that he hasn't suffered any harm. He said he feared for his life because he's witnessed his classmates, school classmates, young kids being killed by the gangs. Have we ever held that fear of harm? Let's assume you've never been harmed physically. You've never been threatened. Have we ever held that in the absence of actual physical harm and actual threats that, you know, there has been persecution for purposes of asylum? Well, I mean, the cases in the statute states that you can have, you can still prevail on asylum even if you haven't suffered any threats, death threats in the past or physical harm. If you have a well-founded fear of future persecution, you can still prevail. And maybe just tell me a case where there has been a holding of a well-founded fear of future persecution, where there's not been any past physical harm or past threats. There may be one. I'm just, I mean, I don't recall one off the top of my head. Are you aware of one? I am, but I couldn't give you any sites, Your Honor. That's okay. But I would state that he did suffer harm. As I said, he didn't suffer physical harm, but he's suffered mental and psychological harm. It caused him to stop going to school. It caused him to flee the country. I just want to circle back. You said he testified that he witnessed his classmates being murdered. That's not what I recall. I thought he recalled that he had classmates who had been murdered. But I don't recall the witnessing part of that, but you might be able to point me to where I missed it. Well, I guess that's part of the problem here. He stated, the judge asked him, did gang members ever approach you directly? His answer, quote, yes, nearby, near, close by, because they killed classmates. So, and then the judge was asked to follow up on that, and he kind of answered in kind of a different way. He really didn't answer. So the judge then realizing, the judge should have realized, okay, we got something here possibly. Let's find out what's here. Let's explore this. Let's follow up. Well, what do you mean you know that classmates were killed? Where were you when that happened? He didn't witness it. So there's an implication there that he did witness it. I thought the follow up was, have you ever, did you have a direct encounter with a gang member ever? And the answer was no. Right. That is, Your Honor. But that doesn't foreclose that he didn't witness from even a short distance or long distance his classmates being killed by gang members. That question is vague. Okay, encounter. Well, I mean, for again, ninth grade education, young boy without counsel, he could have interpreted that in many different ways. And that's, again, part of this whole problem here. There is harm. There is prejudice. Because it wasn't fully developed. The judge should have followed up at the minimum questions about, well, okay, you say that your classmates were killed. When? Where? And what was your proximity to all that? Were you close by? Were you in the area? And that was never asked. You know, that's why the Quintero, why this court laid out these requirements, safeguards for pro se applicants. It's to protect individuals like this petitioner from suffering the prejudice of not having his record fully developed. Not being explained what a particular social group is in plain language, which a Quintero requires. Not trying to... You know, I can't figure out what the social group is. And I guess you can't either on these facts. Whereas Quintero, the facts were very, all the facts there were basically necessary. I mean, the guy was in a gang. He tried to leave the gang. He was threatened. He was threatened with killing. His cousin was in the gang, was threatened with leaving the gang. He was in fact killed. That leads to the question, okay, there's a threat of harm. You've suffered a risk of persecution. At that point, it calls, well, you don't know how to frame the social group, but I suspect that your social group is this. And he says, yes, that's fine. But in this case, I know that some of the language of Quintero supports some mechanical application, but I'm not sure I take it that way. I think that we reacted in Quintero to a circumstance where the non-citizen was basically laid out a really potential claim, and it was simply denied because it wasn't developed adequately, that claim. But in this case, it's hard to find whether this is an asylum claim at all. Well, Your Honor, I understand that the facts are different in their underlying claim. I just have like two seconds if I can just go on for about 30 seconds. Sure. We do lay out what we believe are appropriate particular social groups on page 18 of the petitioner's brief. Basically, membership in the PSE of an El Salvadorian classmate of youth killed by violent and powerful gang members. Another one, El Salvadorian witness to school classmates killed by violent and powerful gang members. But the judge never got into any of that. It should have been clear from the petitioner's statements, his testimony, that that area is out there to be explored. And the judge is like, no, let's move on to school. What if we think those particular social groups as a matter of law aren't valid? Then, it doesn't change really what the courts, what should happen because again, this case is all about, did the IJ follow the provisions and requirements as laid out in Quintero? So you don't even have to, in challenging this, articulate a potentially viable particular social group and I know you think you have and maybe you have. I'm just saying hypothetically. If you don't articulate even a viable particular social group that could possibly apply, do we have to grant the petition under Quintero? Well, I think at the very least it should be remanded back to have that developed to see what particular social groups. It sounds like your answer is yes. Even if in the challenge there's no, once counseled, articulation of a viable particular social group, we still need to send it back? Well, yes, because we don't have all the facts. But I'm sure cognizable PSGs may arise once we have all the facts. Okay. Thank you very much. Thank you very much. We'll adjourn court for the day and come down and brief counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Allison J. Rushing